W. A. B. DALZELL, Appellant, v. THE COMMERCIAL BANK OF ST. LOUIS, Respondent.

**St. Louis Court of Appeals, December 12, 1899.**

1. **Bank:** ITS OWN STOCK: PLEDGED: NOT A PURCHASE. Ramsey by giving his note to the bank for $2,400 in payment of ten shares of its capital stock, which were by him transferred back to the bank as collateral security for the amount of the note, did not constitute a purchase by the bank of its own stock, directly or indirectly.

2. ————: ————: ————: AGAINST PUBLIC POLICY. To refuse a private banking corporation the right to accept a pledge of its own stock as security for past or present indebtedness, would unreasonably restrict its business for lending money, would injure the stockholder as much as the bank, and generally hamper commerce and be contrary to public policy.

Dalzell v. Bank.

Appeal from the St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft,* Judge.

AFFIRMED.

*Geo. W. Taussig* for appellant.

(1) The attempted pledge by Ramsey to the bank was a nullity, and conveyed to the bank no right, title, interest or lien of any kind or character as to said shares. Hotel Co. v. Furniture Co., 73 Mo. App. 135; Carriage Co. v. Hilbert, 24 Mo. App. 338; Bank v. Wulfekuhler, 19 Kan. 60; Abeles v. Cochran, 22 Kan. 405; see Gill v. Balis, 72 Mo. 424; Bank v. Kennedy, 167 U. S. 362; St. Louis Rawhide Co. v. Hill, 72 Mo. App. 143. (2) Whether or not a corporation may deal in its own shares is not simply a question between the state and the corporation or between the corporation and its creditors, but it is a question affecting the validity of the contract itself. Carriage Co. v. Hilbert, 24 Mo. App. 343; Central Trust Co. v. Pullman Co., 139 U. S. 24.

*George S. Grover* for respondent; *Geo. B. Burnett* and *Morton Jourdan* of counsel for respondent.

(1) No statute of Missouri has ever prohibited a state bank, such as this one was, from loaning money upon its own stock as security. Such a transaction is neither a purchase or sale of such stock, and, therefore, the authorities cited by counsel for plaintiff in his brief have no application to the case at bar. Nor can such a transaction be condemned as injurious to the public interest, as the public really have no concern in it. Cook on Corporations, sec. 311; Lumber Co. v. Foster, 49 Iowa, 25; Rollins v. Wagon Co., 80 Iowa, 380. (2) Nor can such a question be raised in a collateral proceeding such as this one is. Reinhard v. Lead Mining Co.,

107 Mo. 616; Granby Mining Co. v. Richards, 95 Mo. 106; Catholic Church v. Tobbein, 82 Mo. 418; Finch v. Ullman, 105 Mo. 255; Keith and Perry Coal Co. v. Bingham, 97 Mo. 196; Kinealy v. Railroad, 69 Mo. 658.   (3)   Even if the transaction between the bank and Mr. Ramsey was invalid, still this action can not be maintained.   Lindell v. McNair, 4 Mo. 380; Brandon v. Carter, 119 Mo. 572; Landes v. Perkins, 12 Mo. 238.

BOND, J.—In May, 1897, Joseph Ramsey, Jr., gave his note to the Commercial Bank for $2,400, which sum was placed to his credit, and thereupon the president of said bank indorsed the note of said Ramsey for that sum to one West in payment of 10 shares of the capital stock of said bank, a certificate for which was delivered to Ramsey, and by him re-transferred to said bank as collateral security for the amount evidenced by his note to it.   On the twenty-second of November following alias execution on a judgment against said Ramsey was levied upon his interest in said shares of stock, "subject to any claim of the Commercial Bank of St. Louis, thereto," said bank having notified the sheriff that it held an "incumbrance" upon said stock to the extent of $3,100 principal and accrued interest of indebtedness due to it from said Joseph Ramsey, Jr., and the president of said bank having further notified the officer that the indebtedness in question was made up of two sums, to wit, $600 and $2,400 with interest, and that the shares were held by the bank in pledge for the payment of said sums.   The sheriff proceeded to sell under his execution the interest of said Joseph Ramsey, Jr. in the shares of stock in question.   Plaintiff was the purchaser at that sale for the sum of fifty dollars, whereupon the sheriff executed to him a bill of sale, and plaintiff after demanding the surrender of said shares of stock by the bank, and being refused brought the present action as for a conversion, laying his damages at $2,500.   The circuit court ruled that plaintiff

Dalzell v. Bank.

could not recover, whereupon he took a nonsuit with leave to move to set same aside which motion being overruled, he perfected his appeal to this court.

The learned counsel for appellant insists that the rule of law forbidding a private corporation (except in special cases) to purchase its own stock applies to and taints with illegality the transaction by which Ramsey pledged his shares of stock in the defendant bank as security for the money advanced to him for the purchase of such shares, and that therefore the pledge from Ramsey to the bank being invalid the title to the stock was unaffected thereby and passed to appellant under the sheriff's sale. We think the learned counsel misconceives the legal character of the transaction between the bank and Ramsey. By the contract between these parties the bank advanced Ramsey enough money to enable him to become the owner of 10 shares of its capital stock, and as a security for such advancement took his note for the sum advanced, with a delivery of the stock as security for the payment of the note. This was not a purchase by the bank of its own stock. It was at most the taking of that stock as a pledge for money loaned the purchaser. Such a transaction would not under the general law make the bank the owner of the stock, nor empower it to deal therewith as owner. Neither (in the absence of an agreement with the pledgor) could the bank become the owner even if the pledge had to be sold on account of nonpayment of the note it was given to secure. Greer v. Bank, 128 Mo. 559. Hence it is clear that the transaction in question was not a purchase, direct or indirect, on the part of the bank of its own stock, and that it does not fall either within the letter or the reason of the rule depriving such corporations of the right, in general, to buy their own capital stock. To refuse a private banking corporation the right to accept a pledge of its own stock as a security for past or present indebtedness, would unreasonably restrict its business of lending money, by depriving it of the right to receive therefor col-

lateral—in the case of stock in many banks—of the highest commercial character and value. Such a restriction would be equally detrimental to the holder of these securities if he desired to use them for the purpose of securing loans from the very bank, which, of all others, should be best informed as to their intrinsic value. It is not the policy of the law to hamper commerce, nor to arrest the free interchange of its greatest utility—money. The judgment of the lower court is manifestly right, and will be affirmed. All concur.