W. E. SHOOK et al., Respondents, v. THE RETAIL HARDWARE MUTUAL FIRE INSURANCE COMPANY, Appellant.

Springfield Court of Appeals, February 6, 1911.

1. FIRE INSURANCE: Iron Safe Clause: Waiver by Agent.  The evidence relating to a waiver of the iron safe clause in a fire insurance policy on the part of the company's agent at the time the premium was paid, is examined and *held* sufficient to constitute such a waiver.

2. PRINCIPAL AND AGENT: Authority of Agent.  The power of the agent whether general or special is determined by the nature of the business intrusted to him and is prima facie co-extensive with its requirements, and the principal is therefore bound by the acts of his agent within the apparent scope of the agent's authority.

3. FIRE INSURANCE: Principal and Agent: Accepting Premiums: Estopped from Denying Agency: Principal Bound by Agent's Representations. A party purporting to act as agent for defendant insurance company, solicited insurance from plaintiffs and at the time represented that defendant was not technical and would not require a compliance with the "iron safe clause" the plaintiffs having informed him at the time that they had no safe and kept their books in a desk. Plaintiffs agreed to take out a policy and paid the agent the premium therefor, which was sent to defendant and a policy was issued. *Held*, that defendant, having accepted the premium and issued its policy on the application taken by a person acting as its agent, was estopped from denying the agency and is bound by the wrongful acts and representations of the agent while acting within the apparent scope of his authority.

4. ———: ———: Authority of Agent to Waive Stipulation. Agents of insurance companies, vested with authority to make contracts and to insure property, stand in the place of the company in dealing with applicants for policies, and may waive stipulations which purport to be essential to the validity of the contract, and this rule prevails over a restriction in the policy prescribing a certain mode in which its terms may be waived or designating particular persons who alone have power to waive them.

5. ———: Appraisement: Waiver. Where a fire insurance policy contained the provision that in the event of a loss and the insured and insurer differed as to the amount of the loss sustained, the amount should be ascertained by an appraiser. *Held*, that the failure to appraise is only available as a defense where the parties disagreed as to the amount of the loss; so if the company wholly denies liability or by its refusal to pay on other grounds which are inconsistent with its purpose to insist on appraisement such conduct would amount to a waiver of the appraisement.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Fyke & Snider,* and *Mann, Johnson & Todd* for appellant.

(1) The judgment should be reversed because there was a total failure on the part of the respondents

to keep and preserve an inventory and books of account, correctly showing in detail all purchases and sales from the stock in question and to produce them after the fire, when demanded. Gibson v. Insurance Co., 82 Mo. App. 515; Keet & Rountree D. G. Co. v. Ins. Co., 100 Mo. App. 60; Johnson v. Ins. Co., 120 Mo. App. 86; Hollinbeck v. Ins. Co., 133 Mo. App. 60; Ins. Co. v. Dudley, 65 Ark. 240, 45 S. W. 539; Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103; Ranier v. Ins. Co. (Tex.), 77 S. W. 421. (2) The policy sued on was received a considerable time after the application therefor was made and signed, and after the conversations with the agent who took said application, testified to over defendant's objections. Said policy was the consummation of the contract and evidence concerning prior transactions and conversation was improper and should have been excluded. Gillum v. Ins. Co., 106 Mo. App. 673; Ins. Co. v. Nuberger, 74 Mo. 167; Helm v. Railroad, 98 Mo. App. 419. (3) Plaintiffs received and retained the policy from its date, Sept. 21, to December 28, following, without objection to the provisions thereof and having failed to make timely complaint were bound thereby. Robertson v. Ins. Co., 123 Mo. App. 247; Ins. Co. v. Nuberger, 74 Mo. App. 167. (4) The offer of $1,017.80 by defendant and its refusal by plaintiffs because "This amount is not satisfactory to us," conclusively witnesses a disagreement as to the amount of loss, so that the appraisal clause of the contract became operative; and until there was an appraisal or an effort to secure one, a cause of action could not accrue, and an action brought before is premature. Gragg v. Ins. Co., 132 Mo. App. 405; Murphy v. Ins. Co., 61 Mo. App. 323, 70 Mo. App. 78; McNees v. Ins. Co., 69 Mo. App. 238; Stevens v. Ins. Co., 120 Mo. App. 88; Zaleskey v. Ins. Co., 108 Iowa 341, 79 N. W. 69; Williamson v. L. L. & G., 122 Fed. 59.

*Hamlin & Seawell* for respondents.

(1) When the soliciting agent was informed by the respondents that they did not have an iron safe, and that they kept their books in a desk in the store, and their policies in the bank, and that he told them that that was all right, that the appellant company was not technical; and when the adjuster was told by the respondents that the books were destroyed by the fire, and afterwards offered to pay one thousand seventeen dollars and eighty cents as the appellant's proportional part of the loss, they waived the requirements of the policies as set up in appellants answer and brief. Riley v. Ins. Co., 117 Mo. App. 129. (2) Knowledge or notice to an agent acquired by the agent during his agency, and referring to a transaction within the scope of his agency, is knowledge and notice to his principal. Hilburn v. Ins. Co., 140 Mo. App. 355. (3) The offer of the adjuster to pay the amount aforesaid mentioned, not having been made by way of compromise, was not only a waiver as to the iron safe, books and inventory clauses, but was also a waiver as to the appraisal clause. Hilburn v. Ins. Co., 140 Mo. App. 355. (4) A forfeiture once waived cannot be recalled. Porter v. Ins. Co., 62 Mo. App. 526. (5) This being a total loss, and the adjuster offering to pay a certain amount (not by way of compromise) as appellant's proportional amount, no appraisement was necessary. Gragg v. Ins. Co., 132 Mo. App. 405. (6) Failure to appraise is only available as a defense when the parties disagree about the amount of the loss. Ball v. Ins. Co., 129 Mo. App. 34.

NIXON, P. J.—This action is based on a policy of fire insurance issued to plaintiffs, insuring their fixtures and stock of general merchandise in the town of Willard in Greene county for $2600. In the trial the plaintiffs obtained a verdict for $2600, and defendant perfected its appeal to this court.

The policy contained the following provision:

"It is a condition of this policy, if at the time of loss the assured shall hold any policy of this or any other company, on the property hereby insured, subject to conditions of coinsurance, percentage of value, or average, or Inventory and Iron Safe Clause, this Company's liability herein shall be limited thereby to the same extent as though such clause were contained in this policy."

The evidence showed that plaintiffs did have coinsurance in five other companies, amounting to $4650, and that in the policy issued to plaintiffs by the Aetna Insurance Company—one of the five—was contained the following provision:

"*Books and Inventory to be Kept or Insurance Void.*—It is a part of the consideration for this insurance and it is expressly warranted, that the assured above named shall take an inventory of the stock above described at least once a year, and shall also keep correct books of account in detail showing all purchases and sales of the same, and shall keep all inventories and books in a fireproof safe, or other place secure from fire in said store during the hours said store is closed for business, or this policy shall be void."

The evidence showed that one of the plaintiffs met the man who represented himself to be the agent of the defendant at a meeting of retail hardware merchants in Springfield, Missouri, and that a few days thereafter this agent called on plaintiffs, who were partners in the general merchandise business at Willard, and sought to sell them a policy in his company. He arrived about nine o'clock in the morning and remained all day. Mr. Shook testified: "Q. State the conversation of the agent with reference to the question of complying with the iron safe clause, and also whether or not he had any knowledge of the other policies, and whether or not you were complying with the provisions of the other policies with reference to the iron safe clause? A. He asked me

if we had other insurance and how much; I told him and he asked to see the policies, and I told him we had no safe, that we kept our books in the desk, but we had our policies over at the bank and I would get the policies. I got them and gave them to him and he went over them. We were waiting on the trade. When I told him we had no safe he said that is all right, our company is not technical like those eastern companies. He had been telling me about their company, some of the good things about them and said our company doesn't deal in technicalities like these eastern companies. He said we had a loss at some town where other companies were represented and I happened to be there the same day. He said he was sent there to adjust the loss and the other companies went through a lot of 'red tape,' and had the insured to get a lot of duplicate invoices, which took him weeks to produce, and they went to every other business man in town and asked them what they thought about the situation, but I waited until they got through and I took the man off to one side and talked to him and settled the loss and went on. Q. Did he look over your stock? A. Yes sir. Q. Did he asked you about what you had—the amount? A. He did, and went on to say we needed more insurance. I told him our stock would invoice $10,000; that we knew nothing about the mutual insurance business, and he talked there for some time, spent the whole day looking through the stock, and stated that $2600 more wouldn't be extravagant insurance, and we told him we didn't want to pay insurance on more than we would be able to collect if we had a loss." The evidence shows that plaintiffs finally agreed to take a policy for $2600, and executed one of the applications the agent carried in his grip (the terms of which do not appear) and gave a check for $48 for the premium and delivered same to the agent; to whom this check was payable does not appear and plaintiffs did not remember, but they said the agent told them how to make it. In a few days the policy was

received through the mail and placed in the bank with the other policies. Plaintiffs did not know whether the agent signed the policy or not and there is nothing in the abstract to enlighten the court on this question; nor does it appear who mailed the policy or from whence it came. As to the negotiations for the insurance, Mr. Farmer testified: "Q. What was said about the safe and where you kept the policies? A. Shook says, 'We haven't any safe and the policies are kept in the bank across the street.' He said 'All right,' and then went ahead and told us a story about not being particular in making these settlements. We showed him where we had the books in the desk. Q. Did you make any inventory at all of the stock? Did you have an inventory? A. Yes sir; it was taken in January, 1909; that was an inventory of the entire stock. Q. Did you keep books of account? A. Yes, sir; showing our purchases and indebtedness and credits and everything of that kind. Those books and inventory and everything were destroyed the night of the fire."

J. E. Leonard, a witness for the plaintiffs, testified that he was in the hardware business at Springfield, and was Secretary of the Retail Hardware Association; that he thought the name of the agent who solicited this insurance was H. V. Mercer; that this agent made an address at the convention in Springfield in the interest of his company on the subject of mutual insurance.

On December 28, 1909, at about two o'clock in the morning, plaintiffs suffered a total loss and at once wired defendant, notifying it of the loss, and also wrote defendant two or three letters, receiving an answer, dated January 3, 1910, stating that the matter had been placed in the hands of the Western Adjustment Company, of Kansas City, for adjustment. An adjuster, representing this adjustment company, soon arrived at Willard and asked plaintiffs where their books were and they told him the books were detroyed by fire; he inquired if the other policies had been settled, and, upon being

informed they had, said "that was all they could do that day, the rest could be settled by mail," and went away.

The evidence showed that plaintiffs settled with the other five companies as follows:

| Company | Insured | Paid. |
|---------|---------|-------|
| Aetna, | $1000 | $452.32 |
| National, | 500 | 195.73 |
| Hartford, | 1150 | 541.46 |
| Hanover, | 1000 | 391.46 |
| Phoenix, | 1000 | 391.46 |
|  | $4650 | $1972.43 |

At this rate, the appellant—its policy being for $2600—would be entitled to settle for $1017.80.

Some time after the adjuster left, plaintiffs received on offer of $1017.80 as appellant's proportional part of the loss (though the terms of this offer do not appear in the record) to which plaintiffs replied: "This amount is not satisfactory with us. We took out this $2600 policy to cover an addition we made to our business during the summer, and the adjusters of the other companies took our invoices of January 1, 1909, not taking into consideration the addition we made after this invoice was taken. We have duplicate invoices showing that we had $12,000 worth of goods on hand at the time of the fire, after deducting our sales for that year. There is no justice in our settling with the H. M. Co. for anything like that. The H. M. Co. knew all about all the insurance we had, for they examined every policy, and looked over our stock, and suggested this amount themselves. We paid them their premium in full and we claim the full amount of the policy. We feel that we did not get fair treatment by the other companies, but that is no reason why we should not have fair treatment by the H. M. Co. If you want to

154 App—26

settle with us please forward to us proofs of loss to be executed in proper form and we will do so on a basis of $2600, the amount of the policy, that the Hardware Mutual Ins. Co. owes us."

At the close of plaintiffs' evidence the defendant offered and the court refused to give an instruction in the nature of a demurrer to the evidence, and it is of this that defendant now complains. If the defendant offered any evidence at the trial it is not preserved for our consideration.

It will be seen from the foregoing that there was evidence for the jury on the issue of waiver by the agent who solicited the insurance of the iron safe clause appearing in the Aetna policy. This agent was not placed on the stand and nothing whatever appears as to the extent of his authority. Plaintiffs testified they never saw him again. He may have been a high official in the company or an agent with very limited powers. There was no evidence that he was merely a soliciting agent. As is well known, in conducting the insurance business, the insurance company acts through general or special agents. There may be agents who have authority only to solicit insurance and submit applications to the company and who have no authority to make any contracts in its behalf not relating to the taking of the policy, or agents with full power to bind it. While in certain cases, the authority of an insurance agent may be limited by notice brought home to the insured, as, for instance, by an express limitation in the policy, restrictions and limitations of which the insured had no notice are not binding on him, but such a limitation is not notice to the insured of the agent's want of power to bind his principal as to transactions before delivery of the policy. [22 Cyc. 1430.] The power of the agent whether general or special is determined by the nature of the business intrusted to him and is prima facie coextensive with its requirements and the company is therefore bound by the acts of the agent within the

apparent scope of his authority. [22 Cyc. 1433; Hern-
don v. Triple Alliance, 45 Mo. App. 426; Harrison v.
Railroad, 50 Mo. App. 332.] In this case the insurance
company received the premium and issued its policy to
the plaintiffs, and, by accepting the benefits of an act to
an assumed agent, the company became bound by his acts
as fully as though he had authority, and by accepting
the premium and issuing a policy upon an application
purporting to be taken by a person acting as its agent
the company estops itself from denying such agency.
The company, having retained the premium and issued
the policy, it is chargeable with any fraud or mistake
of its agent and is bound by any of his wrongful acts or
misrepresentations while acting within the scope of his
authority. [22 Cyc. 1435; Greer v. Lafayette County
Bank, 128 Mo. 559, 30 S. W. 319.]

The evidence shows that plaintiffs acted in the ut-
most good faith, concealing nothing. They gave the
agent to understand they were not complying with
the iron safe clause in the Aetna policy and did not
intend to and he gave them every assurance that it
was not required by his company and accepted the prem-
ium with that understanding. Whether the applica-
tion which plaintiffs executed contained any provision
on the subject we cannot say because it is not before
us. No evidence as to its contents is set forth in the
abstract although presumably in the possession of the
defendant. Nor does it appear by whom the policy
was issued or delivered or whether it was countersigned
by the soliciting agent. Only certain clauses of the
policy are inserted in the abstract and we have no way
of knowing whether the policy was issued by Mercer,
the agent, or whether it was countersigned by him, or
whether he was the writing agent for the defendant
company.

The facts of this case distinguish it clearly from
those cases where the insured deals with the insurer
through an agent with only special or restricted pow-

ers brought home to the insured at the time of the making of the contract. The respondents dealt with the agent, Mercer, as to the iron safe clause, upon his apparent authority to bind or loose the company, and so far as the transaction was concerned the agent became to all intents and purposes the alter ego of the company. The appellant, by accepting the premium procured by its agent from the respondents, became bound by all the agreements and representations made by its agent to procure it. It could not receive the part favorable to it and reject the balance, but its ratification must cover the transaction in its totality—either "all in all or not at all." So far as legal liability of the appellant is concerned, its subsequent ratification was equivalent to a previous authorization of its agent to make the agreements and representations that were made to the respondents as to waiving the iron safe clause, and, having lain by till after the loss, the law will not then tolerate the repudiation of the contract. In this connection we quote the language of Mr. Justice MILLER in the case of Insurance Co. v. Wilkinson, 13 Wall. 222: "The agents are stimulated by letters and instructions to activity in procuring contracts and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect the insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a right to so regard him? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that as to all other acts of the agent, he is the agent of the assured. . . . But to apply such a doctrine,

in its full force to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations. receive the benefits, and the parties supposing themselves insured are the victims.    The tendency of the modern decisions in this country is steadily in the opposite direction.    The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he 'deals.    .    .    . .An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

Defendant in this case objected to all testimony regarding conversations between plaintiffs and Mercer, the defendant's agent, tending to show any agreement made by them anterior to the issuance of the policy that the Inventory and Iron Safe Clause in the Aetna policy should not be obligatory.    Agents of insurance companies, vested with authority to make contracts and to insure property stand in the place of the company in dealing with applicants for policies and may waive stipulations which purport to be essential to the validity of the contract.    [Rudd v. Fire Ins. Co., 120 Mo. App. l. c. 11, 96 S. W. 237, and cases cited; Riley v. Insurance Co., 117 Mo. App. 229, 92 S. W. 1147.] According to these authorities, this rule prevails over a restriction in the policy prescribing a particular mode in which its terms may be waived or designating particular persons who alone have power to waive a term. [Rudd v. Fire Ins. Co., supra; United Zinc Companies v. General Accident Assurance Corporation, 144 Mo. App. 380, 128 S. W. 836.]    Whatever the condition of the law may be in other jurisdictions, the questions involved in this record and vital to the determination of

the rights of the litigants under the decisions of this
state have reached a stage of advanced crystalization.
The law as to the liability of the insurance company
for the contract made by the soliciting agent with the
insured as to the determining of risk is that the insur-
ance company is bound by the acts of such agents, no
matter what conditions and limitations may thereafter
be inserted in the policy of insurance which is subse-
quently issued and received and retained by the in-
sured.  One of the reasons given for the relaxation of
the parol evidence rule in cases of forfeiture is that the
insured should be allowed to show that the facts relied
on to establish the forfeiture resulted from the fraud
or mistake of the agent in the preparation of the appli-
cation or policy.  In other words, the company should
not profit by its own wrong.  In the case of Aetna Live
Stock Ins. Co. v. Olmstead (Mich.), 4 Am. Rep. 483,
the court said that it did not view the rights of the par-
ties in any different light than if the agent were the
insurer himself.  The insurance business was done
through agents almost exclusively, and the maxim *"Qui
facit per alium facit per se"* applied with special force
to their acts.  These agents assumed to have and gen-
erally did have, much more intimate knowledge of the
business than those with whom they dealt.  They might
also be presumed to fairly understand the requirements
of their principals, and how properly and legally to
fill up the blank applications and other papers with
which their principals intrusted them.  The community
in general did not assume to be familiar with these
matters, and would not venture in any case to set up
their own view of what was or was not the proper form
of an application against the positive assertion of an
expert.  In Rissler v. Ins. Co., 150 Mo. 366, 51 S. W.
755, the court said that the agent of an insurance com-
pany is presumed to be more intimately acquainted with
the business of insurance than those whom he solicited.
The average man relied upon the knowledge and skill

of the agent properly to prepare the application, and upon the authority which the agent assumed. He rightly considered that, when the agent was told the facts, he knew which were material and which were not. Also, in the case of Franklin v. Ins. Co., 42 Mo. 456, it was held that parties dealing with insurance agents were induced to rely upon them as having competent authority for the transaction of the whole business which they undertook. If the agent abused the confidence reposed in him by his employers, they must look to the agent. The law would protect the companies against frauds, misrepresentations and breaches of warranty, but it would not lend its aid to support defenses founded upon their own errors or omissions, when they had received the premium, delivered a complete and valid policy, and lain by without objection until a loss had happened; it would not help them to accomplish a fraud upon the insured. In the case of Bergeron v. Ins. Co. (N. C.), 15 S. E. 883, it was held that the company was bound by the knowledge of its agent of facts relied upon to forfeit a policy, and that this ruling rested upon the principle that to permit the insurer to gather into its coffers premiums collected by one of its agents, and to continue to recognize the validity of the contract made through him until it became apparent that a loss had occurred, and then for the first time to repudiate the agency, would be to lend the sanction of law to a palpable fraud. Having accepted a premium to take the risk of indemnifying the insured against loss, it is incompatible for the insurer to attach to the policy a condition that will from the beginning relieve him from the risk.

If the soliciting agent has the authority to make a parol contract with the insured at the time such contract is made and premium paid, and does make such a contract to eliminate from the policy the so-called iron safe clause, such agreement is binding upon the insurance company. If such agent, having made such

a contract, has abused the confidence of his employer or violated his instructions, the insurance company must look to the agent for redress for any damages it has suffered and not to the insured.

The evidence in this case authorized the court to submit the questions involved to the jury. There was evidence to sustain the plaintiff's claim and the finding of the jury in their favor is binding upon an appellate court.

The policy in this case contains the provision that in the event of a loss, if the insurer and insured differed as to the amount of the loss sustained, the amount should be ascertained by appraisers.

This being a total loss, and the adjustment company offering to pay the sum of $1017.80 as appellant's proportional amount, no appraisement was necessary. The appellant and respondents did not disagree as to the amount of the loss. The five other companies had settled the claims against them for considerably less than the face of their policies, and appellant, in making this offer (the terms of which do not appear in this record) simply claimed the benefit of the settlement made by the other insurance companies. The law is well-established that failure to appraise is only available as a defense when the parties disagree as to the amount of the loss. If the company wholly denied liability, or put its refusal to pay on other grounds which were inconsistent with the purpose to insist on an appraisement, such conduct would waive the appraisement. [Gragg v. Ins. Co., 132 Mo. App. 405, 111 S. W. 1184; Ball v. Ins. Co., 129 Mo. App. 34, 107 S. W. 1097.] We think under the evidence the appellant waived the clause as to appraisement, the offer being a virtual admission of the amount of plaintiffs' loss but a claim that appellant was entitled to the benefit of the settlement which the insured had made with the other companies, and it accordingly offered the sum of $1017.80 as its pro rata share. Plaintiffs replied,

"This amount is not satisfactory with us." There is an entire absence of any evidence tending to show a disagreement as to the amount of loss plaintiffs had sustained.

Instruction No. 1 given by the trial court for the plaintiffs is as follows:

"If you find and believe from a preponderance of greater weight of the evidence that the property described in the policy of insurance was destroyed by fire on the 28th day of December, 1909, at Willard, Greene county, Missouri, and that said property so destroyed was at the time contained in the building mentioned in said policy of insurance, and if you further find that plaintiffs, W. E. Shook and Karl Farmer, were partners and the owners of said property at the time of the delivery of said policy and loss of said goods and if you find that at the time of the application for said policy the duly authorized soliciting agent of defendant knew that there was other insurance on said property, and that he examined the other policies of said insurance and knew at the time the plaintiffs were not complying with the iron safe clause mentioned in said other policies and knew that plaintiffs were keeping their books of account and inventories in said store in a drawer of a desk therein, and if you find that said agent knew that plaintiffs had not and did not intend to comply with the provisions of said iron safe clause mentioned in said other policies and with such knowledge agreed that said provision would not be required by defendant, then you will find said provision was waived by the defendant and its duly authorized agent.

"And if you find that plaintiffs kept books of account in detail showing all purchases and sales of the stock of goods described in said policy and that an inventory of said stock by plaintiffs was taken within a year prior to the delivery of said policy and that said books of account and inventory were destroyed by fire *and if you further find that after said loss the duly ap-*

*pointed adjusting agent of defendant visited the scene of said fire and with a full knowledge of all the facts and circumstances surrounding the alleged insurance and loss of said goods agreed that the loss would be settled, and if you further find that the defendant thereafter agreed that the said loss would be satisfactorily and equitably settled,* and if you further find that no disagreement arose between the said parties, plaintiffs and defendant, as to the amount of said loss and that no request for an appraisal thereof was requested by defendant, and if you further find that the defendant was notified within the time required in said policy of said loss and failed to furnish blank form for said proof of loss to plaintiffs, then you will find the issues for the plaintiff."

The clause in the above instruction which we have written in italics is objected to by the appellant on the ground that there was no evidence authorizing its submission to the jury. We find that the adjuster in fact made no such agreement or statement, but that prior to his arrival the appellant wrote respondents a letter advising them that the matter had been placed in the hands of the Western Adjustment Company "who will call on you at once and we trust they will fix you up to your satisfaction." The manifest object of the clause in the instruction referred to was to show the facts under which the jury would be authorized to infer a waiver. Under the view we have taken, the question of waiver after the loss is wholly immaterial to any issue in this case; and while this clause in the instruction, not being based upon the evidence in the case, undoubtedly is subject to criticism, it is wholly immaterial, and, following the injunction of the statute in such case, is not such error as to work a reversal of the judgment.

From a full examination of the evidence and instructions in this case, we are satisfied that the finding

of the jury was for the right party and that their verdict represents justice and right. We find no material error in the record and the judgment is accordingly affirmed. All concur.