## MUTUAL LIFE INSURANCE COMPANY v. SUMMERS.

### (No. 619.)

Insurance—Life Insurance—Recovery Back of Premium · Paid—
Premium Notes—Recovery Back of Proceeds—Oral Contract
of Insurance—Agents—Application for Insurance—Policy—
Acceptance—Question for Jury—Evidence—Misrepresentation ·
· —Authority of Soliciting Agent—Instructions—Limitation of
Actions.

1. In an action to recover back the proceeds of negotiable paper
given for the first year's premium upon an alleged oral
contract for a life insurance policy, which policy, it was
alleged, was never delivered, it appeared that a policy had
been sent to the plaintiff and returned by him on the
ground that it did not comply with the contract, and that
it 'had again been sent to the plaintiff with a letter of
the company's general ·agent explaining the plan of the
policy that was issued, the letter showing that such policy
was not the kind which it was alleged had been agreed
upon. *Held,* that the failure of the plaintiff to introduce
the policy in evidence did not require the reversal of a
judgment in his favor, ·since it appeared from the plead-
ings that the policy that was issued differed from the
one alleged to have been orally contracted for, and the
general agent's letter was sufficient evidence in plaintiff's
favor as to the kind of policy issued to authorize the
submission of the matter to the jury.

2. In an action to recover back money paid or the proceeds
of negotiable paper given for the first year's premium
upon alleged oral contracts for life insurance policies · to
contain certain alleged favorable conditions, which policies,
it was alleged, had never been delivered, the life insurance
company, by its answer, denied generally the averments of
the petition, and pleaded the statute of limitations in bar of
the action, alleging that the money sued for was paid upon
written offers for insurance by the plaintiff and his as-
signors, in which the kind and character of the policies
applied for was designated, that such offers had been ac-
cepted, and policies issued in accordance with the written
applications respectively. *Held,* (1) That without a reply
alleging fraud or deceit in securing the written applica-
tions, evidence was admissible to show the facts and circum-
stances of the signing of the alleged written applications,

even though such evidence might disclose a fraudulent design on the part of the company's agents to deceive, and to show that such applications were void *ab initio,* for the allegations of the answer concerning the written applications did not constitute new matter requiring a reply, but the defendant could have shown under the general denial a contract or contracts different from those alleged in the petition. (2) When the defendant had introduced the alleged written applications in evidence, the plaintiff, upon the pleadings, had · a right to show that they were void *ab initio.*

3. In an action to recover back money alleged to have been · paid upon oral contracts for life insurance policies, the defendant company introduced certain written applications for insurance signed by plaintiff and his assignors respectively, to show that the contracts were different from those alleged in the petition, and that the policies issued complied with such applications. There was · no evidence that the applications were filled in at the time they were signed, but the evidence tended to show that the answers to the questions in the applications were written in by the agents after the applications were signed, and that the agents stated to the respective applicants that the paper was a mere matter of form and the applicant's signature was desired so the same could be shown to the company, and in each application the kind of policy to be issued was described by a technical name and different from the policy alleged to have been orally agreed on. *Held,* that if the jury found that the oral agreements had been made as alleged, then the conduct of the agents, under the circumstances, in describing a different kind of policy in the written applications constituted a fraud upon the applicants; that they represented the company, and that whatever knowledge they had as to the kind and plan of insurance orally agreed upon, and which should have been correctly carried into the written application, would be imputed to the defendant company.

4. In an action against an insurance company on a policy, or to recover the proceeds of negotiable paper given in payment of the first premium, the company is estopped from relying upon the application therefor, which has been filled in by its agent contrary to the true answers, or when they have been · changed or incorrectly written by its agent, or when so written against the agreement between such agent and the one solicited to purchase the insurance. In such case

the act of the agent is treated as the act of the insurer, and not that of the insured; and parol evidence is admissible, not for the purpose of varying the terms of the written application, but to show that such application was never offered to the insurer as a basis for the insurance.

5. In an action against a life insurance company to recover the proceeds of negotiable paper given for the first year's premium on an alleged oral contract for life insurance, where the defendant claimed that a policy had been issued and delilvered in accordance with a written application, but the plaintiff alleged that the policy contracted for had never been delivered, it was proper to submit the question to the jury whether the written application or the oral contract alleged constituted the arrangement between the parties.

6. Where agents of a life insurance company agreed orally to have a life insurance policy issued containing certain conditions, taking from the party to be insured a negotiable note for the first year's premium with the understanding that the insured should have the right to inspect the policy before accepting it and that the note would not be transferred before maturity, but would be returned if the policy was not found satisfactory and accepted, and, in violation of such agreement, the note was transferred before maturity and before the policy was issued, and the note was afterwards paid, but the policy when issued was not found satisfactory because not in compliance with the contract as to its terms; *held,* in an action to recover the proceeds of the note from the insurance company, that an acceptance of the policy was not to be conclusively presumed from the failure to return the policy, but the question of acceptance was a question for the jury upon the facts.

7. In an action to recover from a life insurance company money paid to its agents and received by the company as the first year's premium upon certain representations of the agents as to the terms of the policy, the defendant was not entitled to an instruction that there was no evidence to show that the solicitors were its agents or that they had any authority to bind the defendant by any contract of insurance, for the company could not be heard to say that it did not receive the money paid while repudiating the agreement on which it was paid.

8. An action to recover the proceeds of a life insurance premium note, on the ground that the policy issued did not

comply with the oral contract made with the agent, and that therefore the policy agreed upon had never been delivered, does not come within Section 4298, Comp. Statutes, limiting the time for bringing actions upon contracts in writing for the payment of money, but is controlled by Section 4299, limiting the time for bringing an action upon contracts not in writing, express or implied.

[Decided January 5, 1912.]                    (120 Pac. 185.)

ERROR to the District Court, Carbon County; HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*T. S. Taliaferro, Herbert V. Lacey* and *John W. Lacey,* for plaintiff in error.

The answer raised the bar of the statute of limitations, *viz:* five years, and alleged that the plaintiff and his assignors each made a written application for a policy and life insurance, designating therein the kind and character of policy applied for, and that the company delivered to each applicant a policy in exact accordance with the written application, and that the payments made by plaintiff and his assignors were made as premiums upon said policies. The plaintiff in his reply denied the bar of the statute of limitations, but did not intimate that any fraud or artifice had been practiced upon the plaintiff or either of his assignors in relation to the written applications, or in relation to the delivery and receipt of the policies. The sole issue as to these matters is made up of the allegations of the defendant company that such written applications were made and the policies delivered, and the denial of these facts by the plaintiff.

The plaintiff seeks to recover on the ground that the policies issued to him and to each of his assignors did not conform to the agreement. The plaintiff did not introduce the policy that was issued to him, nor in any way show its contents. The last seen of that policy was when it was in his own hands and in the hands of his attorney. Although the plaintiff attempted to state that the policy did not con-

form to his understanding of the agreement, that was a mere conclusion and not the best evidence, and it was excluded. There was, therefore, no evidence whatever to establish the claim that his policy did not conform to the contract, whether that contract be the alleged parol contract, or whether it was the contract set forth in the written application. Upon the cause of action based upon the plaintiff's own contract there was, therefore, no basis for a recovery. If all the facts alleged in the petition were true, the policies were delivered and were not void, but voidable only. Each policy holder was in such position with reference to his policy that it remained in full force from the time he received it. No one of the plaintiff's assignors repudiated his policy. During the entire period for which the premium was paid the policy was kept alive, and that period had passed before any action whatever was taken by any of the policy holders.

It is not pretended that the contract of the written application and the policy issued thereon was in any case rescinded by the insured. The final writings between the parties became the conclusive evidence of the terms of the agreement. It is immaterial whether the contract was a parol agreement to issue a policy or whether it was made up by the written application and the policy. In either event the policy was delivered. To rescind a contract one must return whatever he received, even though the contract was consummated through fraud. (Provision Co. v. Jones Bros., (Miss.) 39 So. 521; Implement Co. v. Bank, (Kan.) 57 Pac. 1050; Doane v. Lockwood, 115 Ill. 490; Frink v. Thomas, 20 Ore. 265; Wilcox v. Fruit Co., 113 Ala. 519; Schwartz v. McCloskey, 156 Pa. St. 258; Thompson v. Peck, 115 Ind. 512; Farwell v. Hanchett, (Ill.) 9 N. E. 58; Westhafer v. Patterson, (Ind.) 22 N. E. 414; Miller v. Steem, 30 Cal. 402; Weed v. Page, 7 Wis. 503; Kimball v. Cunningham, 4 Mass. 502; Gibson v. Lancaster, 90 Tex. 540.) This principle applies whether the thing purchased is life insurance or any other character of property. And in order to rescind the party must move promptly.

(Bostwick v. Ins. Co., (Wis.) 89 N. W. 538; Fennell v. Zimmerman, (Va.) 31 S. E. 22; Nat'l L. & T. Co. v. Omans, (Mich.) 100 N. W. 595; King v. Mayes, 58 S. W. 573; Leigh v. Brown, (Ga.) 25 S. E. 621; Shedden v. Heard, 110 Ga. 461, 113 Ga. 162; Johnson v. White, (Ga.) 48 S. E. 426.)

The instructions requested should have been given. In each of the cases of plaintiff's assignors there was a written application for a policy. A policy was received, and was never returned. There was no rescission, and yet the action is for money had and received, and necessarily is based upon a rescission of the contract. Moreover, there could have been no rescission of the policy without the consent of the wife of the insured, who was made the beneficiary. (Jurgens v. Life Ins. Co., 114 Cal. 161.) An instructed verdict for the defendant company as to each cause of action should have been given as requested.

*J. H. Ryckman,* for defendant in error.

The whole matter of rescission has been completely settled by this court. (Summers v. Ins. Co., 12 Wyo. 369.) Where a life insurance company delivers a contract different from the one contracted for, the applicant may refuse to accept it and sue to recover the premium paid. (*Id.* and cases cited.) It is wholly immaterial in this case what became of the policies that were issued if they did not conform to the preliminary oral agreement. The policies must not only have been received but they must have been accepted, and not one of the policies which this company delivered was accepted, because not one of them conformed to the preliminary oral agreement in material matters. The plaintiff, and at least two of his assignors, returned their policies, and notified the company that the one sent was not such a policy as the agreement called for. The other assignors knew that the company had refused to keep the policies when returned and thought it a waste of time to try to induce the company to do for them what it had refused to do for the others. Under the issues and facts of this

case the retention of the policies, if any of them were retained, is immaterial. (LaMarche v. Ins. Co., 126 Cal. 498; Maxson v. Llewelyn, 122 Cal. 195; McKay v. Ins. Co., 124 Cal. 270; Urwan v. Ins. Co., 125 Wis. 349.) There never was a contract consented to by both parties, and the premium was therefore recoverable, notwithstanding that the policies may have been retained. (Ins. Co. v. Gorman, (Ky.) 40 S. W. 571; Hedden v. Griffin, 136 Mass. 229; Ins. Co. v. Crane, 134 Mass. 56; Ins. Co. v. Pyle, 44 O. St. 19; Waller v. Assur. Co., 64 Ia. 101; Hornickell v. Ins. Co., 111 N. Y. 390; Randlet v. Herren, 20 N. H. 102; Carter v. Carter, 14 Pick. 424; Palmer v. Ins. Co., 54 Conn. 488; Dickerson v. Colegrove, 100 U. S. 578; Strohn v. Ry. Co., 21 Wis. 562; McElroy v. Assur. Co., 94 Fed. 990.) On the point so much insisted upon by counsel for the company that the parol agreements were merged in the written applications and that the applicants should have read those applications, much authority can be cited to the effect that the question whether the agreements were so merged was properly left to the jury, and was not one of law, but one of fact. (Miller v. Ins. Co., 107 N. Y. 296; Ins. Co. v. Wilkinson, 13 Wall. 222; Kistner v. Ins. Co., 128 Pa. St. 553; Eilenberger v. Ins. Co., 89 Pa. St. 464; McArthur v. Ins. Co., 73 Ia. 336.) The company was bound by the fraud of its agents. (Menk v. Ins. Co., 76 Cal. 50; Bennett v. Ins. Co., 106 N. Y. 243; Wilson v. Ins. Co., 36 Minn. 112; Helm v. Ins. Co., 61 Pa. St. 107; Ins. Co. v. Pearce, 39 Kan. 396; Ins. Co. v. Hick, 125 Ill. 361; Barnes v. Ins. Co., 75 Ia. 11.) It may be shown by parol evidence that the execution of an instrument was procured by fraud or duress. (Underhill's Ev., Sec. 208; 2 Jones on Ev., Sec. 440.) The question as to the intention of the parties is one of fact to be submitted to the jury. (Hoyt v. Ins. Co., 98 Mass. 539; Markey v. Ins. Co., 103 Mass. 78; Rogers v. Ins. Co., 41 Conn. 97; 118 Mass. 178; 125 Mass. 158; Johnson v. Ins. Co., 107 Am. St. 129, note.) The policies were the contracts. The applications were no part of them, and are only referred to in the policy by the

statement that no person has power to bind the company
by making any promise or accept any application not con-
tained in the application "for this contract." This limita-
tion speaks only from the time the policy is received and ac-
cepted. (Baker v. Ins. Co., 70 Mich. 199; Jones v. Ins.
Co., 90 Tenn. 604.) If a person is induced by false repre-
sentations to take out a policy of insurance, he can avoid
it and recover the premiums paid. (Malhoit v. Ins. Co.,
87 Me. 374; Ins. Co. v. Reed, 13 L. R. A. 352; O'Brien
v. Home &c. Soc., 22 N. E. 954.) And such an action may
be maintained whenever the defendant has money belong-
ing to the plaintiff which in equity and good conscience it
ought to refund. (McDonald v. Ins. Co., 68 N. H. 4;
Bank v. Barnes, 18 Mont. 335.)

SCOTT, JUSTICE.

The defendant in error was plaintiff below and for con-
venience will hereinafter be referred to as the plaintiff,
brought this action against the plaintiff in error, defendant
there, and which will hereinafter be referred to as the de-
fendant, to recover the proceeds of a negotiable instrument
given by him as the first year's premium upon an alleged
contract for an insurance policy which was to contain certain
favorable conditions, which policy it is alleged was never
delivered. Plaintiff also alleged that L. V. Shurtleff, George
P. Harvey, Robert B. Harvey, John A. Gordon, Peter H.
Nelson and George Finch assigned their claims of like
character to him. It is alleged in each cause of action ex-
cept as to Nelson and Gordon, who paid cash, that a ne-
gotiable note or notes dated February 27, 1896, due 65 days
thereafter, and in form payable to the soliciting agent or
agents were delivered to the agents upon their promise that
they would not negotiate or transfer such paper before
maturity but would hold it until the policies were delivered
and found in all respects satisfactory and in conformity
to the parol promises made by the soliciting agents and if
not approved and accepted that they would take the policies
and return the notes or premiums paid and that the agents

in violation, of this agreement on or about March 1st, 1896, sold the same to an innocent purchaser for value and that the makers thereof were compelled to pay the same. It is further alleged that the soliciting agents represented themselves as having full authority to make such specially favorable contracts of insurance upon a satisfactory medical examination and that the plaintiff and his assignors, relying upon such representation and the integrity of the agents, were induced to make their respective notes and payments as aforesaid and thereafter submitted to such medical examination, and that the proceeds of the notes and cash paid to the agents were paid to and received by the defendant and that the latter has failed to issue the policies contracted for or either of them or to return the cash paid or the proceeds of the notes, for which plaintiff prayed judgment. The defendant by answer for a first defense pleaded a general denial, and second, the statute of limitations in bar of the action. In the second defense the defendant alleged that the money for which suit was brought was paid upon written offers for insurance made and executed by plaintiff and his assignors in which the kind and character of the policy applied for was designated, and which written offers were forwarded to the defendant at its head office and by it approved and accepted and that each policy was issued exactly in accordance with the written application therefor and delivered during the month of March, 1896. That the soliciting agents had no authority other than to solicit applications for insurance, forward them to its head office for approval and acceptance and if so approved and accepted to deliver the policy issued and collect the premium thereon, and that the money for which suit was brought was paid on said written applications and not otherwise. The reply consisted of specific denials to the allegations so pleaded in the answer and also to the plea of the statute of limitations. The case was tried to a jury and a verdict was returned in favor of the plaintiff upon each cause of action except the sixth, which was to recover the amount paid by Gordon and upon which the verdict was

for the defendant.   No complaint is here made as to the verdict in that respect.   A motion for a new trial was made in each of the other causes of action and overruled.   Judgment was rendered upon the verdict in the 1st, 2nd, 3rd, 4th, 5th and 7th causes of action for the different amounts claimed and interest totaling $3,201.87 and costs.   The defendant brings the case here on error.

1.   It is contended that the evidence is insufficient to support the verdict upon the first cause of action, which was to recover the proceeds of the note given by Summers for the first year's premium upon the contract orally agreed upon, for the reason that he did not introduce the policy in evidence and that for that reason there is nothing to show that the policy sent him by the company differed from the one agreed upon by such oral contract.

The alleged written applications were not involved in the case when it was formerly before this court.   (Summers v. Mutual Life Ins. Co., 12 Wyo. 369, 75 Pac. 937, 66 L. R. A. 812, 107 Am. St. Rep. 952.)   They were introduced in evidence and the name appearing under the questions and recitals in each application was admitted to be in the handwriting of the purported applicant.   The evidence tends to show that they were received at the head office and the policies issued in accordance with their terms, some dated March 12, and the others dated March 14, 1896.   The policies were forwarded to the special agents by mail and the latter remailed them to the plaintiff and his assignors respectively, who received them the latter part of that month.   Neither returned the policy sent to him except Summers, who, on May 16 following, returned it by mail to the soliciting agents, declining to accept it on the ground that it was not the contract bargained for and demanded the return of the premium which he had been compelled to pay.   The special agents returned the policy by letter explaining that it was in accordance with the written application therefor.   On May 25, Summers sent the policy by mail to the head office of the company complaining that it was not the contract agreed upon and the company

referred the matter to its general agent at Denver, inclosed in a letter dated June 9, 1896, to investigate and act thereon, and the latter again sent the policy to Summers explaining the plan of the policy and showing that it was not the kind of policy alleged in the petition and testified to by Summers as having been orally contracted for, and refusing for the the company to return the premium. By the pleadings it appears that all the policies issued differed from that orally contracted for, and aside from that if there was any issue before the court on this question the letter of defendant's general agent was sufficient evidence in favor of Summers to require its submission to the jury.

2. It is contended, first: that whatever oral agreement with reference to the insurance which may have been made by the soliciting agents were merged in the written applications in the absence of an allegation of fraud or deceit and the policies having been issued and delivered in accordance with the terms of such written applications the plaintiff can not recover, and, second: by the failure to return the policies to the company the parties accepted them and a valid contract of insurance was thereby made. It is urged under the first contention that upon the peadings and evidence the court erred in its refusal to give certain instructions requested by the defendant, *viz:* Nos. 12 to 26, inclusive, and in giving instructions numbered 1, 7, 8, 9, 10 and 12 at the request of the plaintiff over defendant's objection. In determining the questions presented by these assignments it becomes necessary to ascertain first what the issues were and the evidence admissible under the pleadings, and, second: whether an acceptance upon the evidence of the non-return of the policy by each of plaintiff's assignors was one of law or of fact to be submitted to the jury.

It was said when the case was here before that the action could be maintained against the defendant for money had and received (25 Cyc. 762) and that the petition on which the case was tried stated a good cause of action therefor.

The answer contained no matter which could not have been proved under a general denial except the defense of the statute of limitations, and which defense was met by a specific denial in the reply. (Comp. Stat. 1910, Secs. 4389, 4399, 4401, 4402; Iba v. Cent. Assn., 5 Wyo. 355.) In Pom. Code Rem., at Sec. 691, it is said: "The general denial puts in issue all the averments of the complaint or petition and permits the defendant to prove any and all facts which tend to negative them. Whatever fact if proved would not tend to contradict some allegation of plaintiff's first pleading, but would tend to establish some circumstances, transaction or conclusion of fact not inconsistent with the truth of all those allegations is new matter." In Sec. 692, id., the learned author says: "Considering the office and function of the general denial and the distinction between it and new matter, the latter confirms and avoids all the material allegations of the complaint or petition, that is, it admits all the material facts averred therein, and avoids their legal result by means of additional facts which are relied upon as constituting a defense." This distinction as to what constitutes new matter necessary to be pleaded in the answer or reply has been followed with almost complete unanimity. (Sec. 691, supra; Sec. 457 Suth. Code Pl. Pr. & Forms.) Under the general denial contained in the first defense it was permissible to prove a contract different from that set up in the petition. (2 Abb. Tr. Briefs, Sec. 143; 1 Ency. Pl. & Pr. 818; Simmons et al. v. Green, 35 O. St. 104; Stetzel v. Ehrman, 114 S. W. 280 (Ky.); Hillard v. Wis. Life Ins. Co., 117 N. W. 999 (Wis.); Tenapin v. Baker, 109 Pac. 931 (Okl.); Dykeman v. Johnson, 93 N. E. 626 (Ohio); Corey v. Campbell, 25 O. St. 134; Miller v. Ins. Co., 1 Abb. N. C. 470; Boomer v. Koon, 6 Hun, 645; Ins. Co. v. Kelley, 24 O. St. 348; Fanning v. Ins. Co., 37 O. St. 344.) The question of the application and delivery of the policies thereon was already in issue under the general denial and the averments thereof in the answer did not constitute new matter and required no reply.

Upon introducing the applications in evidence the plaintiff upon the pleadings had a right to show that they were void *ab initio*. The plea was *non est factum* and the plaintiff had a right to make any showing either of fraud or otherwise as would show such invalidity. (Winchell v. Crider, 29 O. St. 486; Chamboret v. Cagney, 35 N. Y. Super. Ct. 474, 490; Cesby, Ex'tx., &c. v. Weddle, 57 Mo. 452, 458; White v. Middleworth, 42 Mo. App. 368, 373; Neilson et al. v. Schuckman et al., 53 Wis. 642.) It should be observed that no affirmative relief was sought by the defendant under its first defense and the applications were purely defensive matter admissible in evidence under the general denial. Upon such issue the facts and surrounding circumstances as to signing the purported applications were admissible even though the evidence may have disclosed a fraudulent design and intent on the part of the agents to deceive and it appears to have been necessary to resort to such evidence in order to determine whether Summers and his assignors in fact signed the applications as written offers for the policies which the company sent to them. There is no evidence in the record to the effect that the applications were filled in at the time the signatures were obtained; but on the contrary, the evidence tends to show that the answers in the applications were written in afterwards by the agents, and that upon the representation of the agents, in answer to an inquiry as to what the paper was, they stated that it was a mere matter of form and that they desired the signatures so they could show them to the company.

Each of the written applications described the kind of policy to be issued by the use of a technical name and different from the policy alleged to have been orally agreed upon. Such conduct, if the jury believed from the evidence that the oral agreement had been made, as the verdict shows they must have done, constituted a fraud upon the applicants. The agents were furnished with blank applications for insurance by the defendant and were acting within the scope of their authority in soliciting and explaining the

plan of the contract which they were offering to sell to plaintiff and his assignors. They represented the defendant as fully in that respect as its president and were clothed with apparent authority to do so. Whatever knowledge of the kind and plan of insurance agreed upon orally and which should have been correctly carried into the written application and reported to the defendant (Jacoway v. Ins. Co., 49 Ark. 320) would be imputed to the defendant, for its agents were there at its instance with superior knowledge of the terminology of life insurance for the purpose of advising and directing the plaintiff and his assignors in · the matter of the application. (Husten et al. v. South Stl. Ins. Co., (S. C.) 70 S. E. 403; Briggs v. Life Ins. Co., (N. C.) 70 S. E. 1068.) The jury might reasonably infer from the evidence that the blanks in the applications were filled in by the soliciting agents, and if they so found it follows that if the kind and character of the policy as stated in the written applications was falsely stated by its agent, then the defendant is charged with notice of that fact. The decisions are numerous and the drift of the later decisions is to the effect that an insurance company in an action against it on a policy is estopped from relying upon the application therefor, which has been filled in by its agent contrary to the true answers or when they have been changed or incorrectly written by its agent or when so written against agreement between such agent and the one solicited to purchase the insurance. In such case the act of the agent is treated as the act of the insurer and not that of the insured, and parol evidence is admissible not for the purpose of varying the terms of the written application but to show that such application was never offered to the insurer as a basis for insurance. (Ins. Co. v. Wilkinson, 13 Wall. 222, 234; Ins. Co. v. Olmstead, 21 Mich. 246; Brown v. Metropolitan Life Ins. Co., 65 Mich. 306; Ins. Co. v. Mahone, 21 Wall. 152; Ins. Co. v. Chamberlin, 132 U. S. 304, 311; Hingston v. Ins. Co., 42 Ia. 46; Fitchun v. Ins. Ass'n, 103 Ia. 276, 280; Mass. Ins. Co. v.

Estelman, 30 O. St. 647; Ins. Co. v. Williams, 39 O. St. 584, 589; Parno v. Ins. Co., 114 Ia. 132, 134; Rowley v. Ins. Co., 36 N. Y. 550, 554; O'Brien v. Home Benefit Society, 117 N. Y. 310, 318; Kester v. Ins. Co., 128 Pa. St. 553, 15 Am. St. Rep. 696.) The rule and the reason therefor is stated by Judge Cooley in Insurance Co. v. Olmstead, *supra,* as follows: "The general rule undoubtedly is that in the absence of fraud, accident or mistake a party must be conclusively presumed to understand the force of his contracts, and to be bound by their terms. But it cannot be tolerated that one party shall draft the contract for the other, and receive the consideration, and then repudiate his obligation on the ground that he had induced the other party to sign an untrue representation which was by the very terms of the contract to render it void. Still less can this be allowed when the representation itself is so ambiguously worded as to be well calculated to conceal its real meaning and deceive the party signing it. * * * The insurance business of the world is done through agents almost exclusively, and the maxim *qui facit per alium facit per se* applies with special force to their acts. * * * The forms and requirements of different insurers are different; and when an agent who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and are being furnished with all the facts, drafts a paper which he declares satisfactory, and induces the other party to sign it, receives and retains the premium moneys and then delivers a contract which the party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity, on the ground of his agent's unskilfullness, carelessness or fraud." The same rule has been applied in an action to recover the proceeds of negotiable paper given in payment of the first premium and in an action to rescind a policy and recover back the premium. (Maxon v. Llewellyn, 122 Cal. 270, 54 Pac. 732; LaMarche v. Ins.

Co., 126 Cal. 498, 58 Pac. 1053; McKay v. Life Ins. Co., 124 Cal. 270, 56 Pac. 1112; Bennett v. Mass. Mut. Life Ins. Co., 107 Tenn. 371; Jacoway v. Ins. Co., *supra;* 25 Cyc. 761.) .We are of the opinion that defendant's first contention cannot be sustained.

The question as to the effect of the non-return of .the policy by each of the plaintiff's assignors will be referred to in a brief discussion of the assignments predicated upon the giving of certain instructions over objection and the refusal to give instructions requested by the defendant.

Instruction No. 1, which was given over objection and at the request of the plaintiff, was not objectionable at all, except upon the theory that the plaintiff and his assignors were bound absolutely by the written application under the issues in the case, as to the kind of policy applied for, and as to the agreement upon which the notes were given or the premium paid. They were not so bound for the reason, as we have already seen, that the answer setting up the applications and the delivery of the policies thereon did not in that respect aver any new matter requiring a reply; and, therefore, upon offer in evidence of the applications the plaintiff had a right to show any fact which would destroy *ab initio* the binding effect of the written application.

Instruction No. 7, so given, is not objectionable for the reason that the matter was properly left to the jury to determine whether such a contract as alleged in the petition had been made, and whether the money was paid and notes were given in the manner alleged in the petition. It was proper to submit to the jury whether the written applications or the oral contract as alleged constituted the arrangement between the parties. It does not appear that any authority was given to the agents by the applicants to write anything in the application, nor does it appear that anything was written in the application when. the same was signed as to the character of the policy to be issued or as to the application upon which the money had been paid or notes executed.

· · :Nos.·8, 9, 10, 12 'and 13, which were also given over objection' of the defendant, properly·submitted to the jury the same question referred to in the preceding paragraph 'and were for the same reason as therein stated unobjectionable. They were more favorable to the defendant than it was entitled to have given· for the reason that the·court charged that the applicant must have returned the policy to the company within a reasonable time and before· the ·suit was brought.   In view of the collateral agreement shown in this case as to the right of the applicant to inspect ·the policy before accepting it and that the money or·note would be returned if not found satisfactory and accepted; the question of acceptance was a question of fact to be submitted to the jury and not a question of law to be determined by the court (25 Cyc. 722), and under the facts of the·case it can not be held that a failure to return the policy should be conclusively presumed as an acceptance.

Instruction No. 12, which was requested by the defendant, was properly refused, for the reason that if given the court would have decided as a matter of law that Nelson made a written application which was introduced upon the trial, when such a matter was one to be submitted to the jury. Again, the fact that Nelson did not return or offer to return ·the policy nor made any complaint to defendant about it would not, on the facts in this case, constitute an acceptance; but the question of acceptance was one to be submitted to ·the jury.   Requests Nos. 17, 18, 19, 20 and 24 were like in form and applied respectively to the other assigned causes of action and the conclusion reached on No. 12 disposes of all the assignments upon the refusal of the requests numbered above.

By defendant's request No. 13 the court was asked to instruct as follows:  "The court instructs the jury if you find from the evidence in an interview lasting from one to one and one-half hours between the plaintiff and the insurance agents, Ragsdale and Wright, the plaintiff signed a written agreement of insurance in the defendant company

in the sum of $10,000 and in said written application recites that he had paid $454.00 to the said agents, who had furnished him with a binding receipt therefor, signed by the secretary of the company, making the insurance in force from the date of the application, provided the application should be approved and the policy duly signed by the secretary at the head office of the company; and if you further find that the only sum of $454.00 paid by the plaintiff, either by note or in money, was the single payment of $454.00 by note and if you further find that the oral conversations testified to by the plaintiff as having taken place between himself and the agents of the defendant company, Ragsdale and Wright, were all merged and completed in the written application and the said written application thereby became the application of the plaintiff for the policy described therein, then and under such circumstances the plaintiff would not be authorized to maintain his action upon verbal or oral agreement to issue him the policy, and this would be true whether the oral agreements claimed to have been made were put in the written application or not." The court properly refused to give this instruction. There was a part of the oral conversation that would not go into the application at all and constituted a condition precedent to the acceptance of the policy and the holding of the notes and money given and paid until the policies were accepted. It was not pointed out, as in No. 21, which was properly refused on other grounds, which part of the oral conversation would so merge and which would not, and if given would exclude all of the oral conversation from the consideration of the jury if they found that the applications were signed. The receipts which were given were shown by the testimony of the agents and were repudiated by the defendant as unauthorized and not within the scope of the agent's authority. This evidence was introduced by the defendant itself. It was said when the case was here before that the petition would sustain an action for money had and received, and the defendant could not be heard to

retain the money under and at the same time repudiate the application.

The request for instruction No. 14 was faulty for three reasons: (1) If given the jury would have been told that under the issues in the case the plaintiff was in the situation where he could not be heard to say that the written application did not bind him because not according to the stipulation and that it was written falsely and fraudulently. The answer as to the application, as we have already seen, did not require a reply, for it merely amounted to a denial of the cause of action stated in the petition. (2) The instruction directs the jury that if they find that Summers signed the written application and that it contained a recital that "no application has ever been made to any company or association for insurance on my life on which a policy has been issued on the plans and premium late originally applied for, except to the following company or association, and no such application is now pending or awaiting decision in any corporation," to which recital the answer "none" appears, and about the same time gave two notes for $454.00 mentioned in this cause, then this was a clear statement upon which defendant had the right to rely that he was not claiming that any conversation between himself and the defendant's agents in any wise constituted an application or agreement that the defendant should issue any other policy than that specifically described in the written application. The answer was merely to the effect and was merely intended to show that no application had been made to any other company or association except as stated. Further, the answer to that question was written in by the agent and the agent knew (if the previous conversations were intended to be denied by the recital) that the applicant was claiming under the previous conversation, and, as already stated, such knowledge must be imputed to the defendant. (3) Part of the instruction withdrew from the jury all evidence set forth in paragraph one of this instruction as to the difference between the policy received by

Summers and the one orally bargained for and also ignored the admission upon the pleadings of such difference. For the same reasons, or some of them proffered instructions Nos. 15, 16, 21 and 24 were also properly refused. Proffered instruction No. 16 should not have been given for the further reason that defendant's instruction No. 10, which was given, was practically the same as No. 16 refused, except that in addition thereto it refers specifically to the statute of limitations.

By proffered instruction No. 22 it was sought to have the court instruct the jury that there was no evidence to show that the solicitors or either of them were general agents or that they or either of them had any authority to bind the defendant to any contract of insurance or to insure either oral or written and for that reason the defendant was not bound by an oral contract of insurance made or attempted to be made by the agents. Such instruction would have been misleading. The suit was for money paid to the defendant and received by it under representations of its agents and it can not be heard to say that it did not receive the money while repudiating the agreement on which the money was paid. The court properly refused to so instruct.

Request No. 26 was to instruct the jury to find for the defendant. This was properly refused for there was a question of acceptance, as we have already seen, which was for the jury and should not have been decided by the court, and also the question of fraud in the preparation by the agents of the written applications.

Many of the instructions so requested by the defendant and refused were given in slightly different but in a more favorable form than the defendant was entitled to, for the reason that in instructions Nos. 4, 5, 6, 7 and 9, given at its request, the court assumed to state in them with reference to the assigned causes of action, that under the uncontradicted evidence the parties had made their written applications or offers and that unless they returned their policies or offered to return them within a reasonable time and before the suit was brought no recovery could be had

for the proceeds of the notes or premium paid. Such instructions should have been refused, but as they were given in place of those that were refused, the defendant has no cause to complain.

The collateral agreement in this case would have been binding even had there been no preliminary agreement or conversation as to the plan of the insurance, and if the written application constituted without dispute the only application for the policy, the agreement as to the holding of the notes and money given and paid for premiums and their return in case the policy should not be found to be satisfactory and not accepted would have been binding. Inasmuch as it was shown that the notes were disposed of and money paid in violation of that agreement and the applicants knew that fact before they received the policies, it would have been proper to submit to the jury the entire question of acceptance of the policy and without instructing them in effect that a failure to return the policy constituted an acceptance. (Parker v. Bond, 121 Ala. 529, 25 So. 898; Eq. Life Ass'n v. Mueller, 99 Ill. App. 460; N. Y. L. Ins. Co. v. Easton, 69 Ill. App. 479; Smith v. Provident Life Assu. Soc., 65 Fed. 765, 13 C. C. A. 284; Watkins v. Bowers, 119 Mass. 383; Meyers v. Life Ins. Co., 27 Pa. St. 263, 67 Am. Dec. 462.) It is true that there is no evidence except in the case of Summers that an express offer was made to return the policy received, but upon the facts in the case, the matter of acceptance was a question for the jury, and we think the jury were justified upon the evidence in finding that the policies had not been accepted, except in the case of the Gordon policy, in relation to which the verdict was for the defendant. And though the court instructed that a failure as to each of the other policies to return or offer to return it would authorize a verdict for the defendant, we would not be inclined to reverse the case on the ground that the jury may have disregarded that instruction or failed to obey it. As said in the opinion when the case was here before, the allegations of the petition are sufficient to support an action for money

had and received. And, therefore, even though the written application constituted an offer, an acceptance of the policy was necessary to bind both parties, since that was the collateral agreement between the agents and the applicants, and therefore, even upon defendant's theory as to the contract, the question was in the case whether or not the policies delivered had been accepted, and that was a question for the jury to determine for the reasons above stated. All of the instructions requested by the defendant and which were refused, or most of them, were objectionable for the reason that they ignored this question of acceptance, or required the court to decide in effect that there had been an acceptance, or present to the jury an improper basis for such determination.

The verdict is sustained in each of the causes of action involved on this appeal. The statute of limitations pleaded in the second defense by its terms is applicable to contracts in writing for the payment of money, (Sec. 4298, Comp. Stat. 1910) while the causes of action set up in the petition were oral and neither of them was barred inside of eight years from the time it accrued, (Sec. 4299 *id.*) and the action was commenced before the statute had run as to either of them.

No prejudicial error appearing in the record the judgment will be affirmed.

*Affirmed.*

POTTER, J., and MATSON, District Judge, concur.

BEARD, C. J., having announced his disqualification to sit in this case, HON. RODERICK N. MATSON, Judge of the District Court of the First District, was called in to sit in his stead.