## ILLINOIS BANKERS' LIFE ASS'N v. DODSON. (No. 7589.)

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1916. Rehearing Denied Dec. 9, 1916.)

1. INSURANCE ⬥373(1)—SOLICITING AGENT—POWERS—ESTOPPEL.

If an insurance agent sent out by his company to solicit applications states to a person that the insurance will cost a stated sum per year and he, induced by and relying thereon, pays the stated amounts, which the company accepts, and issues the policy without informing him in any way whatever that the sum paid is not a full year's premium, the company is estopped to assert forfeiture for nonpayment of an assessment of which insured had no notice.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 947; Dec. Dig. ⬥373(1).]

2. INSURANCE ⬥183—POWERS OF SOLICITING AGENTS—IMPLIED POWERS.

An insurance agent soliciting insurance and obtaining applications, collecting premiums and delivering policies has implied authority to state to applicants with binding effect on the insurer what the amount of the annual premium will be.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 394; Dec. Dig. ⬥183.]

3. INSURANCE ⬥629(2) — PLEADING — SUFFICIENCY.

Allegations of petition that a certain agent procured deceased to take out a policy, stating to him that the premium would be $20 per year, that such agent delivered the policy without notifying insured that the premium would be greater than originally stated, sufficiently alleged the authority of the agent to bind the company by his statements as to what the premium would be.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1584; Dec. Dig. ⬥629(2).]

4. INSURANCE ⬥665(2)—ACTIONS—AUTHORITY OF SOLICITING AGENT—EVIDENCE.

Evidence *held* to show that the agent soliciting insurance had power to bind insurer by a statement of what the annual premium would be.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1709; Dec. Dig. ⬥665(2).]

5. INSURANCE ⬥131(3) — CONSIDERATION — WAIVER OF REPRESENTATIONS.

Where the soliciting agent for insurance represented that the annual premium would be a certain sum, whereas the by-laws, by refer-

ence incorporated in the policy, provided for assessments, the fact that the representation was oral and preceded delivery of the policy which was accepted and retained without objection is of no serious consequence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 209; Dec. Dig. ☞131(3).]

6. PRINCIPAL AND AGENT ☞116(1)—POWERS OF AGENT—IMPLIED POWERS.

Powers of an agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 377; Dec. Dig. ☞116(1).]

7. WITNESSES ☞192 — COMPETENCY — HUSBAND AND WIFE—CONFIDENTIAL COMMUNICATIONS.

In an action by the wife on a policy on her husband's life, her statement as to what the husband said when he delivered the policy to her as to the time when the premium would be due is not objectionable as a confidential communication.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 739; Dec. Dig. ☞192.]

8. EVIDENCE ☞317(4)—HEARSAY.

Such testimony was, however, hearsay and incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1177; Dec. Dig. ☞317(4).]

9. EVIDENCE ☞370(3) — CORPORATE RECORDS —ADMISSIBILITY.

In an action against a foreign insurance company on its policy, the record of an assessment passed at a meeting, signed by the president and secretary, is admissible in evidence under Rev. St. 1911, art. 3713, providing that the records of any company incorporated within the state shall be competent evidence in a proceeding to which the corporation is a party and in view of the presumption, in the absence of proof of the statute of the corporation's domicile, that such statute was the same as prevailed in Texas.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1562; Dec. Dig. ☞370(3).]

10. EVIDENCE ☞370(3) — CORPORATE RECORDS—ADMISSIBILITY.

To render such certificate admissible it was not essential to prove that the signers were the president and secretary of the corporation or that the signatures were theirs.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1562; Dec. Dig. ☞370(3).]

11. INSURANCE ☞602, 643(1)—REFUSAL TO PAY ON DEMAND—PENALTY—DEMAND—SUFFICIENCY.

The demand by the beneficiary for payment of a disputed claim on a policy of life insurance, sufficient to entitle him to recover 12 per cent. damages and attorney's fee, may be made after bringing action on the policy and be shown by amendment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1498, 1587; Dec. Dig. ☞602, 643(1).]

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by Eugenia Dodson against the Illinois Bankers' Life Association. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Hugh W. Peck, of Dallas, for plaintiff in error. Locke & Locke, of Dallas, for defendant in error.

TALBOT, J. Eugenia Dodson, the defendant in error, who will hereinafter be designated as plaintiff, brought this suit against Illinois Bankers' Life Association, plaintiff in error, who will hereinafter be called defendant, to recover on a policy of insurance of $1,000 issued by the defendant on the life of George W. Dodson, plaintiff's husband, payable to plaintiff. The death of George W. Dodson occurred within the first policy year. The defendant defended on the ground that an assessment claimed to have been levied about six months after the policy was issued had not been paid. The plaintiff denied that any such assessment had been levied, and pleaded that neither she nor her husband, George W. Dodson, had any notice of any such assessment, that neither the policy nor any paper delivered to them gave any information of such assessment, but that, on the contrary, it was represented by the agent of the defendant that the sum paid by George W. Dodson on the issuance of the policy carried the policy for a year, and that this representation was made by defendant's agent as a part of and in pursuance of a fraudulent scheme conceived and executed by the defendant to obtain policy holders.

The case was tried with the aid of a jury and submitted on special issues. On the findings of the jury, which were favorable to the plaintiff, judgment was rendered in favor of the plaintiff for $1,371.24, of which $1,051.24 represented the principal of the policy sued on and the interest accrued thereon, $120 statutory penalties, and $200 an agreed reasonable attorney's fee. The defendant's motion for a new trial being overruled, it brought the case to this court by writ of error.

The defendant's assignments of error from 1 to 8, inclusive, complain of the court's action in overruling special exceptions urged to plaintiff's pleadings. The plaintiff alleged, among other things, that the deceased, George W. Dodson, was induced to apply to the defendant for the policy sued on by one H. Capers, a duly authorized agent of the defendant; that the said Capers represented to the said Dodson that said insurance would cost him, or require the payment of premiums by him, of only the sum of $20 per year, but that at the beginning of the first year he would be required also to execute two notes of $10 each due in one and two years for a guaranty fund; that the said Dodson, induced by said representation, agreed to apply to the defendant for said policy, and did so apply, and was examined by the defendant's medical examiner, and thereafter the policy in suit was delivered to him by the defendant, acting through its said agent, H. Capers; that the said Dodson thereupon executed to the defendant and delivered to it through its said agent his two notes for $10 each due in January, 1914, and January, 1915, for the guaran-

ty fund as aforesaid, and shortly thereafter paid to the defendant through its said agent the sum of $20 as and for the premium for the first year in pursuance of the representations of the said agent and the recital in said policy, which was that the same was issued in consideration of the sum of $20 paid by the said Dodson; that the defendant did not then, or at any time, through the said agent, Capers, or any other agent or officer, either orally or in writing, notify or inform the said Dodson, or notify or inform the plaintiff during the life of the said Dodson, that said representation of said Capers was incorrect or that any sum whatever would be due from him on account of said policy prior to the expiration of one year from the date thereof; that the policy delivered to the said Dodson contained, aside from the recital mentioned above, no mention of the amount or date of premium payment, and especially contained nothing in any wise repugnant to or inconsistent with the representation of the said Capers; that it is true that it contained a provision that the charter and by-laws of the defendant association should be a part of the contract, and that upon the failure of the said Dodson to pay the calls levied within the time allowed by the by-laws of the defendant the policy should be forfeited and all rights to any share or interest in the guaranty fund or other property of the defendant should cease absolutely at the expiration of the time within which such payment should be required to be made; but no copy of the charter or by-laws was delivered to the said Dodson, and he believed, and had a right to believe, that such by-laws provided for the payment of premiums or calls only as the said Capers had represented as aforesaid; that the plaintiff does not know what provisions are contained in said charter and by-laws, and has no information concerning the contents of the same except as the defendant has undertaken to state them in the letters hereinbefore set out; that the plaintiff has never seen a copy of said charter or by-laws, and though, through her attorneys, she has often requested of the defendant and its agents a copy of the same, the defendant and its agents have failed and refused to furnish her with the same; that no notice whatever was received by the said Dodson or by the plaintiff of any call levied or premium due at any time after the issuance of said policy, and both the said Dodson and the plaintiff fully believed that said policy was fully paid for one entire year from the date of its issuance; that if any notice had been given, either to the said Dodson or to the plaintiff, of any call properly levied and really due from the said Dodson or the plaintiff under the charter or by-laws of the defendant, the same would have been promptly paid. Wherefore said policy was in full force at the time of the death of the said George W. Dodson on July 7, 1913, as aforesaid.

These allegations, it is asserted, are defective and insufficient: (1) Because it is not alleged that the said Capers was authorized to enter into such an agreement with the said George Dodson, or any agreement or contract other than to receive the application for said policy, and, if authorized, how was he so authorized? (2) because the representations and agreements therein alleged were merged into and became a part of the contract sued on; (3) because said policy having been delivered to the said assured, George Dodson, and the same having been acquiesced in and accepted by him as the basis of the insurance contract, the assured had waived any representations made by the said agent or any agreement had with the said Capers contrary to the stipulations set out in said policy, and is now estopped from pleading same to vary the terms of said contract; (4) because said policy having been delivered to assured, and the assured having accepted same, plaintiff is now estopped from setting up any belief, understanding, or agreement other than is expressed by the application and the terms of the policy; (5) because the doctrine of estoppel has no application where a statement relates to a written contract yet to be made and entered into, and because the insured, having executed the application for insurance, had notice of the limited authority conferred on the agent; (6) because plaintiff does not allege that defendant corporation had conferred authority on said Capers which would empower and authorize him to change the rate and time of payment of premium due defendant for said insurance; (7) because the application signed by insured seeking to obtain said insurance gave insured notice that premiums were collected on "calls" of defendant, and gave the insured notice that the premiums collected each year were not certain, fixed, and definite sums, but were paid on assessments or calls levied by directors of defendant, and because said application gave insured notice of the limited authority conferred on said Capers.

[1] We think the exceptions of the defendant were properly overruled. It is well said by counsel for the plaintiff in his counter proposition that:

"When an agent is sent out by his company to solicit applications for insurance from members of the public and to advise them what such insurance will cost, and does state to a particular member of the public that it will cost him so much per year, and he, induced thereby, and relying thereon, makes application and pays what the agent tells him the insurance will cost him for the first year, and the company accepts the money and issues the policy, and, by no provision in its policy or any other paper delivered to him, and by no communication, written or oral, informs him that any payment will be due by him in less than one year, the company, on his death within the year, is estopped to assert the forfeiture of such policy for nonpayment of an assessment levied within the year of which he had no notice of any kind. Especially is this true when the company, for the furtherance of its business, has adopted forms of paper and a course of business deliberately de-

signed to withhold from him knowledge of such intended assessment until he is formally advised thereof by receipt of a demand for payment."

This is but stating the well-established rule of equitable estoppel, and the facts disclosed by the record present a case for the operation of that doctrine.

[2] As pointed out by the plaintiff, the agent, Capers, was appointed by the defendant and orally authorized to solicit insurance, obtain applications, collect premiums, and deliver policies, and there seems to have been no restrictions, oral or written, on his authority. That he was expected and authorized to state the cost of the insurance, which he was employed to solicit, and to state when and what premium would be payable thereon, is a clear implication from the authority to solicit insurance, obtain applications, and collect premiums. Such authority in the present case is not based on implication alone. The general agent of the defendant testified, in effect, that it was expected that the agent would make such statements and that he was authorized to do so. Besides, the manual of instructions placed in the agent's hands contained a passage whereby the defendant not only suggested, but instructed, the agent to state to a prospective applicant the cheapness of the insurance offered. Again, it seems that the defendant relied exclusively on its agents to present the facts in that respect to an applicant; for it is made to appear that it printed no literature for distribution by its agents explaining the cost, and particularly not the greater charge for the insurance during the first year. It did not distribute copies of its charter or by-laws, nor place any memorandum or notice whatever on application, policy or other paper, delivered either to the prospective applicant or newly admitted member, whereby he could learn when and what premiums would be payable on the policy. It trusted to its agent to impart all necessary information on that subject. H. Capers, the agent of the defendant who solicited George W. Dodson to apply for the policy of insurance issued to him, said:

"The first thing I told him was the price. I usually, in soliciting insurance, tell the man what it will cost a year. I first told him what it would cost a year, and then I expected to tell him—which I never did—about the first premium being for only six or eight months, or five months. Really I had met George out here at the tent meeting we have been having, and I thought I would explain it to him, but I never had an opportunity; I never saw George to talk to him but three times after the policy was issued. The first time I met him, I told him what would be the annual premium, exactly what it would cost a year, the first jump out of the box. I told Mr. Dodson what his policy would cost him for the first year. In soliciting business I would do that the very first thing, and then get down and negotiate, and then explain further about the other premium afterwards."

He asserted, however, that he never did tell George (Dodson) that $20 would pay the premium for one year.

The plaintiff, Mrs. Eugenia Dodson, testified:

"I was present at a conversation between Mr. Dodson and Mr. H. Capers regarding the insurance policy. That conversation occurred at our home, 3309 San Jacinto street, city of Dallas, Tex. There was no one else present except the doctor that examined Mr. Dodson for the insurance. The conversation occurred in the evening after supper. It is rather hard for me to tell exactly the conversation that occurred, there was so much said on different subjects and about the policy, but the main thing that the agent said to induce him to take the policy was on account of the cheapness of it. He said the policy would cost Mr. Dodson $20 a year; that was to pay for the policy one year."

[3–5] We conclude sufficient authority in the agent of the defendant dealing with the deceased, Dodson, was both alleged and proved, and that the facts that the representation made in the case was oral, and that it preceded the delivery of the policy of insurance, and that the policy was accepted and retained without objection are of no serious consequence.

[6] It is well-established law:

That the "powers of an agent are prima facie coextensive with the business intrusted to his care, and that they will not be narrowed by limitations not communicated to the person with whom he deals." Union Ins. Co. v. Wilkinson, 13 Wall. 235, 20 L. Ed. 617; 22 Cyc. 1423; Amarillo National Life Ins. Co. v. Brown, 166 S. W. 658; Shook v. Retail Hardware Mut. Fire Ins. Co., 154 Mo. App. 394, 134 S. W. 589.

In Mutual Life Ins. Co. v. Summers, 19 Wyo. 441, 120 Pac. 185, cited by the plaintiff, the court, in discussing the authority of the agents to explain the proposed contract involved in that case said:

"The agents were furnished with blank applications for insurance by the defendant, and were acting within the scope of their authority in soliciting and explaining the plan of the contract which they were offering to sell to plaintiff and his assignors. They represented the defendant as fully in that respect as its president, and were clothed with apparent authority to do so. Whatever knowledge of the kind and plan of insurance agreed upon orally, and which should have been correctly carried into the written application and reported to the defendant (Jacoway v. Insurance Co., 49 Ark. 320, 5 S. W. 339), would be imputed to the defendant; for its agents were there at its instance, with superior knowledge of the terminology of life insurance, for the purpose of advising and directing the plaintiff and his assignors in the matter of the application. Huestess et al. v. South Atl. Ins. Co., 88 S. C. 31, 70 S. E. 403; Briggs v. Life Ins. Co., 155 N. C. 73, 70 S. E. 1068."

In Pfiester v. Missouri State Life Ins. Co., 85 Kan. 97, 116 Pac. 245, the company defended on the ground that the second annual premium had not been paid. The plaintiff claimed that the defendant's agent had represented to the insured that annual premiums would be payable on the policy on June 14th of each year, or within 30 days of grace thereafter, and that by fault or mistake the date had been otherwise fixed in the policy. The company denied the authority of the agent, and urged, as the defendant does in this case, that the insured accepted the

policy without objection and was concluded thereby. The court, in ruling against the contention of the company, said:

"In this case the agent had authority to negotiate, write, and transmit the application. For those purposes he had all the power the company itself possessed, and agreements made with him as to what the terms of the application should be were made with the company. It was the agent's duty to frame the application according to the agreement with the plaintiff, and his neglect to do so was the neglect of the company. His knowledge of the agreement was the knowledge of his principal, and consequently, for all purposes of the law, the defendant knew the true terms of the application."

In the present case we think it was within the scope of the agent's actual, as well as his apparent, authority to make representations concerning the cost of the insurance he was offering to George W. Dodson, and the authorities make it quite clear that the defendant is responsible for the representations actually made by him. The provision of George W. Dodson's application for the insurance pleaded by the defendant as precluding the plaintiff from showing the representation made by the agent does not have that effect. This provision of the application, as contended by plaintiff, has reference to statements of an insured to the defendant in his application and in the medical examiner's report, and not to statements by its agent to an insured. But, if this were not true, the provision would be unavailing in view of the evidence of the positive representation and fraudulent concealment introduced in this case.

[7, 8] It is assigned that the court erred in permitting the following question to be asked the plaintiff, Eugenia Dodson, by her counsel while she was testifying in her own behalf, and her answer thereto, namely:

"What, if anything, did he (Dodson) say to you at the time he gave you the policy? A. He just handed me the policy and said: 'Mama, put this one away; we won't have to be bothered paying on this for one year, and the others are paid by the month;' and so I put it with the other policies and locked it up. He (Dodson) said, 'We won't have to be bothered paying on this policy for a year.'"

This testimony was objected to by the defendant on the grounds that it was immaterial and irrelevant; that it was a confidential communication between husband and wife; that no agent of defendant was present when said communication was made, and the same was a self-serving declaration. We think the objection that this testimony was a confidential communication between husband and wife is not well taken. As said by Mr. Wigmore in his work on Evidence, § 2336:

"The essence of the privilege is to protect confidences only, and if the communication is not intended to be a secret one, the privilege has no application to it."

Looking to the subject-matter of the communication admitted in this case and the circumstances under which it was made, we think it should be held that it was not a confidential declaration. But it occurs to us that it was hearsay, and as such was irrelevant and incompetent. Whether the agent of the defendant, in soliciting and inducing the deceased, George W. Dodson, to apply for the policy of insurance in suit, represented to the said Dodson that the insurance to be obtained thereby would cost him or require the payment of premiums by him of only the sum of $20 per year, was a vital issue in the case, and the declaration of the plaintiff's husband to her, when directing her to put the policy away, to the effect that "we won't have to be bothered paying on this for one year," was very material testimony tending to show that such representation was made; therefore it cannot be said the testimony was harmless, and we think it should have been excluded.

[9, 10] The twelfth assignment of error complains of the court's action in refusing to admit in evidence a certified copy of a resolution or by-law of the defendant by which it expected to show that the assessment or call No. 61, for the nonpayment of which it is claimed the policy sued on was forfeited, was a valid call, having been duly made by the board of directors of the defendant in accordance with the authority vested in them by its charter and by-laws. The document offered and excluded purported to be a copy of a resolution passed at a meeting of the directors of the defendant, held at its office, at which the assessment or call in question was made, and attached thereto were the following certificates:

"Monmouth, Ill., Nov. 12, 1914.

"I, W. A. Sawyer, do hereby certify that I am the secretary of the Illinois Bankers' Life Association, a corporation organized under the laws of the state of Illinois; that as such secretary I am the keeper of the records and seal of said association.

"I hereby further certify that the above is a true and correct copy of the record of a directors' meeting of the said Illinois Bankers' Life Association as shown by the records on file in the office of said association.

"In witness whereof I hereunto affixed my hand and seal of the association the day and year above written. [Signed] W. A. Sawyer, Secretary of Illinois Bankers' Life Association.

"I, W. H. Woods, do hereby certify that, as president of said association, I presided at the meeting of which the above is the record and that the acts and doing of said meeting are correctly recorded above.

"In witness whereof I hereunto affixed my hand and seal the day above written. [Signed] W. H. Woods, President of Illinois Bankers Life Association. [L. S.]"

The defendant objected to the introduction of this document on the grounds that it was not shown that the signatures attached thereto were the genuine signatures of W. A. Sawyer and W. H. Woods, or that either occupied the official position indicated at the time of the pretended execution of the document, that there was no testimony that such a resolution was passed by the board of directors of defendant, or that the paper contained a true copy of a resolution passed by them, and

that said copy was not the best evidence of the action of the directors.

We are of opinion that none of the objections urged by the plaintiff to the introduction of this testimony are well taken, and that its exclusion, if no other reason exists for so doing, requires a reversal of the case. Article 3713 of our statute (Rev. St. 1911) provides that:

"The records of any company incorporated under the provisions of any statute of this state, or copies thereof duly authenticated by the signature of the president and secretary of such company, under the corporate seal thereof, shall be competent evidence in any action or proceeding to which such corporation may be a party."

The defendant is a foreign corporation, domiciled in the state of Illinois, and we are not informed by the record sent to this court what the statute of that state requires of a corporation in respect to preserving a record and minutes of the official acts of its directors, and in the absence of such information the statutes of this state which require such records and minutes to be made, and which authorize the introduction of copies thereof as evidence, must be applied. This is the holding of the Court of Civil Appeals of the Third District in this state in the case of People's Building Loan & Savings Ass'n v. Chambers, 54 S. W. 247, and meets with the approval of this court. The names of W. H. Woods and W. A. Sawyer, who signed the document in question as president and secretary, respectively, of the defendant, and certified that it was a true and correct copy of the record of a directors' meeting of the Illinois Bankers' Life Association, the defendant, appear to have been signed to the policy in suit as president and secretary, respectively, of the defendant association, and there is nothing in the record indicating that they did not hold those positions when the resolution offered in evidence and excluded upon the objections urged by the plaintiff purports to have been passed and their certificates thereto were made. Their official positions then not having been called in question, it must be held that, under the statute of this state and the presumption that the statute of the state of Illinois is the same upon the subject involved, the resolution was sufficiently authenticated to authorize its admission in evidence for the purpose for which it was offered, and that it was not essential to its admissibility to prove aliunde the certificates attached thereto that W. H. Woods was the president and W. A. Sawyer the secretary of the defendant, and that the signatures subscribed to said resolution and certificate were the genuine signatures of the said Woods and Sawyer.

[11] It is further assigned that the court erred in awarding to plaintiff the attorney's fee and statutory damages. In this there was no error. As contended for by plaintiff,

the demand necessary to entitle a plaintiff, in a suit like this, to recover 12 per cent. damages and reasonable attorney's fee, where the defendant has failed to pay the loss within 30 days after demand therefor, may be made after the institution of suit, and the fact of such demand shown by an amended petition thereafter filed. Such was the holding of this court in Security Trust & Life Ins. Co. v. Hallem, 32 Tex. Civ. App. 134, 73 S. W. 554, in which a writ of error was denied by the Supreme Court, and in Assurance Co. v. Sturdivant, 24 Tex. Civ. App. 331, 59 S. W. 61. See, also, Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204.

There are several assignments of error which have not been discussed. Many of these assignments have been disposed of adversely to the defendant's contention by what has already been said, and those not so disposed of do not disclose reversible error.

For the reason indicated, the judgment is reversed, and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes